UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

COREY LAMAN HOWELL,

       Plaintiff,

v.                              Case No. 3:21-cv-1205-MMH-LLL

E. PEREZ-LUGO, et al.,

       Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Corey Laman Howell, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on November 29, 2021, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1)[1] under 42 U.S.C. § 1983. The Court dismissed the Complaint without prejudice for failure to state a claim for relief and afforded Howell an opportunity to amend. See Order (Doc. 2). Howell proceeds on an Amended Complaint (AC; Doc. 8) with exhibits (Doc. 8-1 through 8-7), filed on April 14, 2022. In the AC, Howell names as Defendants: (1) Centurion of Florida, LLC; (2) Dr. E. Perez-Lugo; (3)

_____

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

A. Robinson, ARNP; and (4) M. Tomlinson.[2] He alleges that Defendants violated his rights under the Eighth Amendment when they failed to adequately treat his irritable bowel syndrome (IBS). As relief, Howell seeks declaratory relief, as well as compensatory and punitive damages. This matter is before the Court on Centurion's Motion to Dismiss (Motion; Doc. 18). Howell filed a response in opposition to the Motion. See Response (Doc. 29). Centurion's Motion is ripe for review.

## II. Plaintiff's Allegations[3]

Howell asserts that in 2009, doctors at Florida State Hospital diagnosed him with IBS and prescribed Metamucil and Linzess for his symptoms. AC at 3. According to Howell, the FDOC subsequently transferred him to the Reception and Medical Center (RMC), where doctors prescribed him Dulcolax. Id. Howell avers the Dulcolax was not effective, and he began to experience pain. Id. Following x-rays which revealed an impaction, RMC medical staff gave Howell an enema and again prescribed Metamucil. Id. Howell maintains

---

[2] The Court dismissed without prejudice the claims against Defendants Perez-Lugo, Robinson, and Tomlinson for Howell's failure to prosecute. See Order (Doc. 39).

[3] In considering Centurion's Motion, the Court must accept all factual allegations in the AC as true, consider the allegations in the light most favorable to Howell, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the AC, and may well differ from those that ultimately can be proved.

he received a referral to a gastroenterologist. Id. According to Howell, however, he never saw a gastroenterologist, and the FDOC instead transferred him to nine correctional institutions until he arrived at Columbia Correctional Institution (Columbia CI). Id. at 3-4.

At Columbia CI, Howell informed medical staff of his IBS "only to have his medication (Metamuc[i]l) taken away." Id. at 4. He states that he made multiple sick call requests, after which medical prescribed him stool softeners and laxatives. Id. Howell experienced severe side effects from the medications, including nausea, vomiting, and bloating. Id.  He asserts that he again made sick call requests until he saw ARNP Robinson who "mocked and ridiculed [him], refusing to address the prescribed medications and their side effects." Id. After additional sick call requests, Howell saw Dr. Perez-Lugo, who prescribed him Metamucil and referred him to a gastroenterologist. Id. However, Howell maintains Dr. Perez-Lugo "cancel[led]" the prescription and referral. Id. "To date [Howell] has yet to receive relief or to see a specialist or a gastroenterologist to obtain relief." Id. Howell alleges "[i]t is common practice to make an inmate 'jump through hoops' to try to obtain even the minimal medical care." Id. He states prisoners should have the ability to visit the doctor

3

after completing three sick calls; however, they generally must visit the ARNP "who will take the easiest course possible just to push the inmate off." Id. at 5.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (internal quotations omitted); <u>see also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as <u>de</u> <u>facto</u> counsel for a party or to rewrite an otherwise deficient pleading in order to

sustain an action.'" <u>Campbell v. Air Jamaica Ltd.</u>, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting <u>GJR Invs., Inc. v. Cnty. of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 709).

## IV. Analysis

In the Motion, Centurion argues that Howell's claim against it should be dismissed because he fails to state an Eighth Amendment claim upon which relief can be granted. <u>See</u> Motion at 5-10. According to Centurion, Howell offers mere conclusory assertions that it had a custom or policy of "making inmates 'jump through hoops' to obtain medical treatment." <u>Id.</u> at 7. Further, Centurion contends that Howell fails "to plausibly allege he suffered a constitutional injury from his care and treatment at Columbia CI." <u>Id.</u> at 8. In response, Howell asserts that he has stated a plausible claim upon which relief may be granted.[4] <u>See</u> Response at 3.

Pursuant to the Eighth Amendment of the United States Constitution, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel

---

[4] In the Response, Howell appears to raise additional claims of retaliation; however, he may not amend his AC in a response to a motion to dismiss. <u>See</u> Fed. R. Civ. P. 7(b); <u>Huls v. Llabona</u>, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (noting that a plaintiff cannot raise new arguments in a response to a motion to dismiss and instead must seek leave to amend his complaint). The Court therefore will not consider these claims.

and unusual punishments inflicted." U.S. Const. Amend. VIII. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer, 511 U.S. at 834); Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. Id.[5] The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety. Id. The Eighth Amendment guarantees that prisoners are provided with a minimal civilized level of life's basic necessities. Id.

> Under the subjective component, a prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. Id. This means the prisoner must show that the prison officials: (1) had subjective knowledge

---

[5] Chandler, 379 F.3d at 1289.

7

> of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct that is more than mere negligence. <u>Farrow v. West</u>, 320 F.3d 1235, 1245 (11th Cir. 2003).

<u>Oliver v. Fuhrman</u>, 739 F. App'x 968, 969-70 (11th Cir. 2018).[6] "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986).

As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" <u>Keohane v. Fla. Dep't of Corr. Sec'y</u>, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). To prevail on a deliberate indifference claim, a plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

---

[6] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

8

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). To meet the first prong, the plaintiff must demonstrate an "objectively serious medical need"—i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," and, in either instance, "one that, if left unattended, poses a substantial risk of serious harm." Id. (alteration adopted) (quotations omitted). To satisfy the second, subjective prong, the plaintiff must prove that the prison officials "acted with deliberate indifference to [his serious medical] need." Harper v. Lawrence Cnty., 592 F.3d 1227, 1234 (11th Cir. 2010) (quotation omitted). "To establish deliberate indifference," a plaintiff must demonstrate that the prison officials "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." Id. (quotation omitted).[7] An inmate-plaintiff bears the burden to establish both prongs. Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007).

---

[7] The Eleventh Circuit previously recognized "a tension within [its] precedent regarding the minimum standard for culpability under the deliberate-indifference standard." Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 n.2 (11th Cir. 2020). Regardless, the court stated that the "competing articulations–'gross' vs. 'mere' negligence"–may be "a distinction without a difference" because "no matter how serious the negligence, conduct that can't fairly be characterized as reckless won't meet the Supreme Court's standard." Id.; Patel v. Lanier Cnty., 969 F.3d 1173, 1188 n.10 (11th Cir. 2020). Recently, the court resolved that tension by unequivocally instructing that an Eighth Amendment deliberate indifference claim requires a showing that a defendant "acted with more than gross negligence." Wade v. McDade, 67 F.4th 1363, 1374 (11th Cir. 2023) (emphasis omitted).

Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020) (footnote omitted; emphasis added). For medical treatment to rise to the level of a constitutional violation, the care must be "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Hoffer, 973 F.3d at 1271 (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Grossly incompetent or inadequate care can constitute deliberate indifference . . . as can a doctor's decision to take an easier and less efficacious course of treatment" or fail to respond to a known medical problem).

However, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotations and citation omitted).

10

Moreover, the Eleventh Circuit has noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting Waldrop, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

As relevant to Howell's claims, a municipality or other governmental entity may be held liable under § 1983 where that municipality's policies or customs cause a constitutional violation. City of Canton v. Harris, 489 U.S. 378, 385 (1989); McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Harris, 489 U.S. at 385. Where, as here, a private entity contracts with a state or municipality to provide medical services to inmates, it becomes the functional equivalent of the state under §

11

1983. See Craig v. Floyd Cnty., 643 F.3d 1306, 1310 (11th Cir. 2011); Buckner

v. Toro, 116 F.3d 450, 452 (11th Cir. 1997). Thus, to state a claim, a plaintiff

must allege that the agents of the private medical provider violated his

constitutional rights, and its policy or custom was the "moving force behind"

the deprivation. See Craig, 643 F.3d at 1310.

> "A policy is a decision that is officially adopted by the
> [governmental entity], or created by an official of such
> rank that he or she could be said to be acting on behalf
> of the [governmental entity]" while "[a] custom is a
> practice that is so settled and permanent that it takes
> on the force of law." Sewell v. Town of Lake Hamilton,
> 117 F.3d 488, 489 (11th Cir. 1997). "Proof of a single
> incident of unconstitutional activity is not sufficient to
> impose liability" on a governmental entity as part of
> either a policy or custom unless the challenged policy
> itself is unconstitutional. City of Oklahoma City v.
> Tuttle, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85
> L.Ed.2d 791 (1985) (plurality opinion); accord Craig,
> 643 F.3d at 1310–11.

Ireland v. Prummell, 53 F.4th 1274, 1289 (11th Cir. 2022).

Here, Howell neither identifies an official Centurion policy of deliberate

indifference nor an unofficial Centurion custom or practice that acted as a

moving force behind the alleged constitutional violation. While Howell alleges

in a conclusory manner that "[i]t is common practice for prison medical officers

to make an inmate 'jump through hoops' to try to obtain even the minimal

medical care," AC at 4, he fails to attribute this practice specifically to

Centurion much less present any factual allegations in support of such a conclusion. His factual allegations relate only to isolated incidents at Columbia CI, where medical staff did not prescribe alternative medications or refer him to a gastroenterologist. However, Centurion cannot be held liable simply because it employed those individuals. See Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022) ("Supervisory officials are not vicariously liable under section 1983 for the unconstitutional acts of their subordinates."). Howell's conclusory allegations are insufficient to sustain a claim that Centurion had a policy or custom of denying adequate medical care to inmates. As such, he fails to state an Eighth Amendment deliberate indifference claim against Centurion.

Nevertheless, even assuming Howell sufficiently pled the existence of an unconstitutional policy attributable to Centurion, his allegations of inadequate medical care do not amount to a constitutional violation. Howell maintains that while housed at RMC, he received a prescription for Metamucil and a referral to a gastroenterologist, but Dr. Perez-Lugo cancelled the prescription and referral after he examined Howell at Columbia CI. AC at 3-4. Howell concedes that he received stool softeners and laxatives. Id. at 4. According to Howell, Dr. Perez-Lugo's failure to prescribe additional medication "or [refer

him] to [] a specialist or a gastroenterologist to obtain relief" amounts to deliberate indifference. Id. at 4. But, as pled, these allegations amount to no more than a difference in medical opinion between the medical staff and Howell as to the appropriate course of treatment, which does not constitute deliberate indifference. See Pounds v. Dieguez, 850 F. App'x 738, 741 (11th Cir. 2021) (finding inmate's allegation that doctor was deliberately indifferent to his serious medical needs by failing to reinstate a referral to a gastroenterologist demonstrated "a classic example of a matter for medical judgment" insufficient to state a claim of deliberate indifference). Therefore, Centurion's Motion is due to be granted.[8]

Accordingly, it is now

**ORDERED:**

1.    Defendant Centurion of Florida, LLC's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 18) is **GRANTED.**

2.    Plaintiff  Corey Laman Howell's Amended Complaint (Doc. 8) is **DISMISSED without prejudice**.

---

[8] Centurion also contends that Howell sued "Centurion/MHM Services," "a nonexistent entity upon who, if [Howell] were successful, [he] would not be able to recover a judgment." Motion at 5. To the extent Centurion argues for dismissal on this basis, the Court declines to address its argument because Howell has failed to state a claim upon which relief could be granted and the AC is subject to dismissal.

3.     The Clerk shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of June, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 5/16
c:     Corey Laman Howell, #J56416
       Counsel of record

15